19 A.3d 1017

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. G.L., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 1, 2011—Decided May 20, 2011.

Before Judges WEFING, PAYNE and BAXTER.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*William Welaj,* Designated Counsel, on the brief).

*John L. Molinelli,* Bergen County Prosecutor, attorney for respondent (*Catherine A. Foddai,* Senior Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

PAYNE, J.A.D.

In 1995, defendant, G.L., at age seventeen, pled guilty to conduct that, had he been an adult, would have constituted first-degree aggravated sexual assault on a twelve-year-old in violation of *N.J.S.A.* 2C:14–2a(1).[1]  As a result of the offense, defendant, who was given a three-year suspended sentence and two years of probation, was subject to Megan's Law, *N.J.S.A.* 2C:7–1 to –23, which had been enacted in the previous year and was effective on October 31, 1994.  Accordingly, defendant registered with the Bergen County Prosecutor's Office on December 21, 1995.

In 1998, defendant was indicted for failure to re-register pursuant to Megan's Law, *N.J.S.A.* 2C:7–2, having moved to Florida without registering there, as required, and without notifying the prosecutor in New Jersey of the move, although defendant alleges that he did inform his probation officer.  Following indictment, defendant was extradited from Florida and pled guilty to the charge of failure to register.  At sentencing, defendant stated to the judge:

I'm sorry about not register[ing].  I really am.  If I'd a known that I had to register every year, I would have to save myself from this because I was starting

---

[1] In a certification submitted in connection with this appeal, defendant claims that he pled guilty to "sexual battery." We are unable to confirm the charge to which defendant pled, but note that the prosecutor has consistently stated it to have been aggravated sexual assault.

life in Florida just recently. We [defendant's family] got a pizzeria and everything and I don't want to go to jail for not registering. And I—I must say I am sorry for not registering and it won't happen again. I mean I'm going to register every year and every change of address. That I can promise you.

Following defendant's statement, the judge noted that defendant "did originally register but apparently did not quite understand his obligation. So I find it a technical violation." He therefore imposed, in accordance with the plea agreement, a sentence of ninety days in county jail, together with appropriate fines and penalties.

However, on July 21, 2000, defendant again violated the registration requirements of Megan's Law. On October 12, 2000, he pled guilty to an accusation charging fourth-degree failure to register pursuant to *N.J.S.A.* 2C:7–2, and on December 5, 2000, he was sentenced to three years of probation for failure to register and for violation of a probationary sentence imposed as the result of other charges. When, in 2001, defendant again violated probation and incurred new charges, the judge imposed a four-year custodial sentence for violation of probation, two counts of third-degree theft from the person and aggravated assault on a police officer.

Thereafter, defendant wrote to the prosecutor, among others, seeking to have his 1995 plea vacated because he was not informed of its Megan's Law consequences. Following an investigation, the prosecutor determined that it was questionable whether defendant's plea was knowing and voluntary.[2] After consultation with the victim and defense counsel, the plea was vacated and defendant was permitted to plead to fourth-degree child abuse, in violation of *N.J.S.A.* 9:6–3, an offense that is not subject to Megan's Law. In supplying a factual basis for the new plea,

---

[2] The prosecutor's conclusion was based upon the fact that, in another matter heard in the same time period, another juvenile had pled guilty before the same judge to an act of delinquency that was subject to Megan's Law without being informed of the law's consequences. We have not been provided a copy of defendant's 1995 plea transcript and cannot verify whether the prosecutor's conclusions were, in fact, supported by the record in this case.

defendant admitted that he had performed digital penetration and cunnilingus on the twelve-year-old victim.

Approximately one year later, defendant moved to have his convictions for failure to register vacated. However, his unopposed motion was denied on the ground that the convictions for failure to register were based upon an adjudication that was in full force and effect at the time that the failures took place and therefore were validly entered. This appeal followed.

On appeal, defendant argues through counsel:

THE RELEVANT CIRCUMSTANCES OF THE PRESENT CASE JUSTIFY VACATING THE DEFENDANT'S PREVIOUS CONVICTIONS FOR FAILING TO REGISTER AS A SEX OFFENDER BASED UPON FUNDAMENTAL FAIRNESS.

Counsel argues that the purpose of vacating defendant's 1995 plea was "to eliminate any ramifications" caused by his 1995 Megan's Law plea. Further, he notes that it was the prosecutor who, after receipt of defendant's correspondence and resulting investigation, proposed a solution to the problem raised by defendant and obtained the consent of the victim and defense counsel to implementing that solution. Additionally, during the 2007 proceeding in which his 1995 plea was vacated, defendant had asked whether, as a result, anyone would be able to learn that he had been a Megan's Law offender, and he was informed that an order would be signed "to remove him from Megan's Law." Although it does not appear that defendant's subsequent convictions for failure to register were considered at the time, defendant now argues that, as a matter of fundamental fairness, those convictions should be vacated, as well, so as to completely erase the sex-offender stigma from defendant's name.

In contrast, the State argues that the fact that defendant's adjudication of delinquency for aggravated sexual assault, which triggered the registration requirement, was vacated in 2007 is irrelevant to defendant's 1998 and 2000 convictions for failure to register. In support of that position, the State relies on a factually analogous California decision in *In re Watford*, 186 *Cal.App.*4th 684, 112 *Cal.Rptr.*3d 522 (3d Dist.), *review denied*,

2010 *Cal. LEXIS* 10454 (2010).[3]  In addition, the State contends that the doctrine of fundamental fairness is inapplicable in the present circumstances.

In a pro se reply brief, defendant addresses the State's position and presents the following additional arguments:

*POINT ONE*

MISINTERPRETATION OF THE FACTS AND PROSECUTOR'S ARGUMENT CAN SERVE TO WRONGFULLY SWAY THE APPELLATE COURT.

*POINT TWO*

WHY THE FAIRNESS DOCTRINE SHOULD APPLY IN FAVOR OF THE DEFENDANT.

*POINT THREE*

THE STATE MISUSED CASE LAW AS PRECEDENT.

Defendant argues that he was denied due process in connection with his 1995 guilty plea when the judge, prosecutor and defense counsel failed to advise him that he would be required to register as a sex offender for life before he entered his plea and in connection with his sentencing, and the advice provided by his probation officer regarding registration did not cure the initial due process violation.  Had he been made aware of the consequences of his plea, he never would have entered into it, and thus he would not have been subject to charges arising from his failure to register.  Defendant additionally argues that it was fundamentally unfair to later arrest him for failure to comply with sentencing requirements that were not set forth on the record by the sentencing judge and that were the result of an uninformed plea.[4] As a final matter, defendant seeks to distinguish *Watford* by arguing that it did not concern a defendant who was not informed by the sentencing judge of the requirements of his sentence.

Having considered the arguments presented through counsel and by defendant in his pro se brief, we accept the reasoning of

---

[3] A state or regional reporter citation is unavailable.

[4] Defendant does not offer either the transcript of his 1995 plea or the transcript of his sentence to support these allegations.

the California Court of Appeal in its decision in *Watford* as persuasive. In that case, the petitioner sought a writ of habeas corpus directing the Superior Court to vacate a judgment of conviction for failing to register as a sex offender, contending that, after the California conviction had been entered in 2008, a Massachusetts court had granted petitioner's motion to vacate his underlying 1986 plea to a sex offense as involuntary and unconstitutional, and the prosecutor had declined to re-prosecute. Under these circumstances, the defendant argued that his conviction for failure to register was void *ab initio,* and that he was being unlawfully incarcerated for that conviction. *Id.* at 687, 112 *Cal.Rptr.*3d at 524. The court disagreed, construing statutory sex offender registration provisions like those in New Jersey, and holding:

> Petitioner has not shown that his 2008 conviction in Placer County is invalid. On the date of his arrest, he was required to have registered under [*Penal Code*] sections 290 and 290.005, and he had failed to do so. The fact that the predicate offense was later dismissed did not render the 2008 conviction invalid. At the time of his arrest, he was in violation of the law, and he is incarcerated for that violation. [*Id.* at 688, 112 *Cal.Rptr.*3d at 525.]

According to the court, the California Sex Offender Registration Act indicated that its registration requirement applied, regardless of a subsequent finding that the predicate offense was invalid, if at the time of the failure to register, the defendant was under a legal duty to do so. *Id.* at 690, 112 *Cal.Rptr.*3d at 526. The court found that its conclusion was supported not only by the language of the Act, but also by its broad purpose, which was " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.... Plainly, the Legislature perceives that sex offenders pose a "continuing threat to society" ... and require constant vigilance.' " *Id.* at 690, 112 *Cal.Rptr.*3d at 527 (quoting *Wright v. Superior Court,* 15 *Cal.*4th 521, 63 *Cal.Rptr.*2d 322, 936 *P.*2d 101, 104 (1997) (internal citations omitted)).

In support of its decision, the court relied on the United States Supreme Court's opinion in *Lewis v. United States,* 445 *U.S.* 55,

100 *S.Ct.* 915, 63 *L.Ed.*2d 198 (1980). In *Lewis,* the defendant, who had pled guilty to a felony in Florida, was later charged in Virginia with receipt, as a convicted felon, of a firearm that had been shipped in interstate commerce in violation of § 1201(a)(1), as amended, of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 *U.S.C.A. Appx.* § 1202(a)(1).[5] Prior to the bench trial on the Virginia charges, defense counsel informed the judge that the defendant's plea to the Florida felony had been uncounseled, in violation of *Gideon v. Wainwright,* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963), and thus the plea was constitutionally flawed. The Virginia judge found the claim that the defendant's plea had been unconstitutionally obtained to be immaterial with respect to his status under the federal weapons statute, a determination that was affirmed by the Court of Appeals for the Fourth Circuit by a divided vote.[6] *Id.* at 56–57, 100 *S.Ct.* at 916–17, 63 *L.Ed.*2d at 204.

On further appeal, the Supreme Court affirmed, determining that the relevant statute unambiguously applied to any person who " 'has been convicted by a court of the United States or of a State ... of a felony.' " *Id.* at 60, 100 *S.Ct.* at 918, 63 *L.Ed.*2d at 206 (quoting 18 *U.S.C.A. Appx.* § 1202(a)(1)). Nothing excepted persons whose convictions were subject to collateral attack. *Ibid.* (citing *United States v. Culbert,* 435 *U.S.* 371, 373, 98 *S.Ct.* 1112, 1113–14, 55 *L.Ed.*2d 349, 352 (1978)).

Turning to the statute's legislative history, the Court found "nothing to suggest that Congress was willing to allow a defendant to question the validity of his prior conviction as a defense to a charge under § 1202(a)(1)." *Id.* at 62, 100 *S.Ct.* at 919, 63 *L.Ed.*2d at 207. The Court observed: "What little legislative history there is that is relevant reflects an intent to impose a firearms disability on any felon based on the fact of conviction." *Ibid.* The Act was

---

[5] This provision was repealed on May 19, 1986, *P.L.* 99–308, § 104(b), 100 *Stat.* 459, effective 180 days after enactment.

[6] *United States v. Lewis,* 591 *F.*2d 978 (4th Cir.1979).

passed in response to a rise in political assassinations and violent crimes involving firearms during the 1960s, and reflected a desire "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Id.* at 63, 100 *S.Ct.* at 919–20, 63 *L.Ed.*2d at 208 (internal quotation and citation omitted).

Finally, the Court noted that a convicted felon could pursue relief from the terms of the Act by seeking a pardon or the consent of the Secretary of the Treasury, or by a challenge to the conviction in the state courts. *Id.* at 64, 100 *S.Ct.* at 920, 63 *L.Ed.*2d at 208. The Court concluded:

> It seems fully apparent to us that the existence of these remedies, two of which are expressly contained in the Omnibus Act itself, suggests that Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress' purpose broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.
>
> [*Id.* at 64, 100 *S.Ct.* at 920, 63 *L.Ed.*2d at 208–09 (internal quotation and citation omitted).]

We are persuaded that the reasoning of *Watford* and *Lewis* is applicable in the present matter. The registration requirement to which defendant was subject is, along with community notification, a basic component of Megan's Law. As stated by our Supreme Court:

> The Registration and Notification Laws are not retributive laws, but laws designed to give people a chance to protect themselves and their children. They do not represent the slightest departure from our State's or our country's fundamental belief that criminals, convicted and punished, have paid their debt to society and are not to be punished further. They represent only the conclusion that society has a right to know of their presence not in order to punish them, but in order to protect itself.
>
> [*Doe v. Poritz,* 142 *N.J.* 1, 13, 662 *A.*2d 367 (1995).]

The registration provision, set forth in *N.J.S.A.* 2C:7–2, requires registration, in a statutorily prescribed manner, by "[a] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of [an enumerated] sex offense." As in *Watford,* the terms "convicted" and "adjudicated delinquent" are "unadorned by any modifier, such as 'final judgment' or 'valid.'" *Watford, supra,* 186 *Cal.App.*4th at 690, 112

*Cal.Rptr.*3d at 527. However, relief from the requirement of registration can be obtained upon application to the Superior Court and "upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others." *N.J.S.A.* 2C:7–2f. In 1998 and 2000, failure to register was a fourth-degree crime. *N.J.S.A.* 2C:7–2a.

The Legislature has justified the registration requirement by finding:

a. The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.

b. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons.

[*N.J.S.A.* 2C:7–1.]

Nothing in the statute suggests that the requirement of registration should be retroactively annulled because a plea to a crime subject to Megan's act is later withdrawn. Thus, as in *Watford* and *Lewis*, no legal basis for vacating defendant's convictions for failure to register exists.

Defendant argues that principles of fundamental fairness require that the convictions be vacated. We agree that such principles were properly applied by the prosecutor in advocating for withdrawal of defendant's 1995 plea and by the judge in granting the application. *See State v. Thomsen*, 316 *N.J.Super.* 207, 215, 719 *A.*2d 1288 (App.Div.1998). Arguably, such principles could be applied to defendant's 1998 conviction for failure to register if, as defendant claims, he was insufficiently informed of the registration requirements applicable to him—a factual matter that we cannot decide on the basis of the existing appellate record. However, as the extract of the 1998 plea colloquy that we have previously quoted makes clear, at that time, defendant was made fully aware

of his reporting obligations. Thus, his violation of *N.J.S.A.* 2C:7–2 in 2000 was inarguably knowing. In these circumstances, we perceive nothing fundamentally unfair in retaining on defendant's record the evidence of his violation of the law. In this regard, we find the judge's subsequent determination to permit defendant to withdraw his 1995 plea to be irrelevant. *Cf. State v. Crawley,* 187 *N.J.* 440, 458, 901 *A.*2d 924 (affirming the defendant's conviction for obstructing a police officer lawfully performing an official function by means of flight, despite the fact that the police's investigatory stop was not based on reasonable and articulable suspicion), *cert. denied,* 549 *U.S.* 1078, 127 *S.Ct.* 740, 166 *L.Ed.*2d 563 (2006).

In sum, we find no statutory or equitable basis to require that defendant's 1998 and 2000 convictions for failure to register be vacated. If relief is sought, defendant must obtain it by compliance with the provisions of *N.J.S.A.* 2C:7–2f.

Affirmed.