# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2462-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

W.G.,[1]

     Registrant-Appellant.

_____

Submitted October 21, 2024 – Decided November 6, 2024

Before Judges Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. ML-09-008.

Schuman, Hanlon Margulies, attorneys for appellant (Gerald D. Miller, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Angela Halverson, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] We use initials to protect appellant's privacy interests. R. 1:38-11(b).

Registrant appeals from the denial of his motion to terminate his Megan's Law registration obligation. On August 14, 2000, registrant pleaded guilty to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He was sentenced to 180 days of imprisonment and two years of probation. As a condition of his sentence, registrant was ordered to comply with Megan's Law and community supervision for life ("CSL"). Decades later in 2023, defendant moved to terminate his Megan's Law registration and CSL obligations, claiming he was eligible because he had been offense-free for longer than the minimum fifteen-year period required in N.J.S.A. 2C:7-2(f). However, in 2007, registrant had been convicted of wandering or prowling with the purpose of unlawfully obtaining or distributing a controlled dangerous substance ("CDS"), N.J.S.A. 2C:33-2.1(b), specifically marijuana. Registrant sought to overcome this obstacle by relying on provisions of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMM Act"),[2] which was enacted in 2021, in part, to allow for the expungement of certain enumerated marijuana offenses. The trial court ruled the CDS offense was not included in the list of marijuana offenses eligible for expungement pursuant to the CREAMM Act.

---

[2] N.J.S.A. 24:6I-31 to -56.

Registrant appeals, arguing his CDS offense should be deemed expungable pursuant to the CREAMM Act to avoid "absurd" results that would be contrary to the Act's purpose.

He questions:

I. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION TO TERMINATE HIS MEGAN'S LAW OBLIGATION WHEN HE HAS REMAINED OFFENSE-FREE, BUT FOR A WANDERING OR PROWLING TO OBTAIN MARIJUANA OFFENSE THAT IS NOT ENUMERATED UNDER THE CREAMM ACT AS EXPUNGABLE?

We conclude the trial court did not err and affirm.

I.

On April 28, 2000, a Monmouth County grand jury returned an indictment containing three counts: second-degree sexual assault, N.J.S.A. 2C:14-2(c)(5), now 2C:14-2(c)(4) (count one); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count two); and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count three). Registrant pleaded guilty to count two, and the State agreed to recommend that the remaining counts be dismissed.

On November 21, 2000, registrant was sentenced to 180 days incarceration and two years' probation. He was obligated to comply with Megan's Law and CSL as a condition of his sentence.

A-2462-23

On May 16, 2006, registrant was arrested and charged with possession of CDS, specifically marijuana, in contravention of N.J.S.A. 2C:35-10(a)(4). He subsequently pleaded guilty on June 29, 2007, to the lesser offense of wandering, remaining in, or prowling public places with the purpose of obtaining or selling CDS, contrary to N.J.S.A. 2C:33-2.1(b), a disorderly-persons offense.

On January 11, 2023, registrant moved to terminate his obligation to register under Megan's Law and be released from CSL, claiming he had not committed any crimes during the fifteen years since his release from custody.

The State objected to registrant's removal from Megan's Law registration but did not oppose his removal from CSL. Registrant's CSL obligation was terminated; he does not seek review of the trial court's order with respect to this issue. On March 14, 2024, the trial court denied the motion to terminate registrant's Megan's Law obligation, ruling the CDS offense to which registrant had pleaded guilty was not an enumerated offense eligible for expungement pursuant to the CREAMM Act. The trial court found the language of the statute enumerating the expungable offenses to be clear and unambiguous.

II.

Our review of the applicability, validity, or interpretation of statutes is de

novo.  See Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019); State v. Fuqua, 234 N.J. 583, 591 (2018).  "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

When interpreting the language of a statute, if the language "is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" Cashin v. Bello, 223 N.J. 328, 335 (2015) (quoting Hubbard v. Reed, 168 N.J. 387, 392 (2001)).  "If a plain-language reading of the statute 'leads to a clear and unambiguous result, then [the court's] interpretive process is over.'"  State v. Amer, 254 N.J. 405, 422 (2023) (quoting State v. Hupka, 203 N.J. 222, 232 (2010)).  "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history . . . .'"  Williams v. N.J. State Parole Bd., 255 N.J. 36, 46 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)).  Likewise, we may examine legislative history if "a plain reading of the statute leads to an absurd result or [] the overall statutory scheme is at odds with the plain language."  State v. Rodriguez, 238 N.J. 105, 114 (2019) (quoting DiProspero,

183 N.J. at 493).

Megan's Law is a sex-offender-registration and community-notification statute. See N.J.S.A. 2C:7-1 to -11. As noted by the Legislature, the danger of recidivism posed by sex offenders, particularly those offenders who commit sexual acts against children, "require[s] a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety." N.J.S.A. 2C:7-1. Megan's Law requires registration by a person "who has been convicted, adjudicated delinquent or found not guilty by reason of insanity" for the commission of a listed "sex offense." N.J.S.A. 2C:7-2(a)(1). Registration pursuant to the statute is an obligation for life, but registrants are afforded a one-time opportunity to apply to terminate the obligation "upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility . . . whichever is later, and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). This narrow exception to the lifetime registration requirement in Megan's Law requires a registrant be "offense free" and is not available to registrants who commit an offense during the fifteen years following conviction or release but later remain offense-free for a subsequent period of fifteen years. See In re H.D., 241 N.J. 412, 421 (2020). The fifteen-year requirement "plainly refers to

A-2462-23

the conviction or release that trigger[ed] the registration requirement . . . . "  Ibid.

The term "offense" is defined as "a crime, a disorderly persons offense or a petty disorderly persons offense . . . . "  N.J.S.A. 2C:1-14(k)  Thus, a disorderly-persons offense is an "offense" within the codified definition of Megan's Law.  See N.J.S.A. 2C:1-14(k).

Accordingly, we agree with the trial court.  The court could not terminate W.G.'s Megan's Law registration obligation pursuant to N.J.S.A. 2C:7-2(f) because, having been convicted of a disorderly-persons offense in 2007, he was not offense-free for fifteen years since the end of his period of incarceration.

The CREAMM Act is a wide-ranging statute that decriminalized certain marijuana offenses, provided for the expungement of some offenses, and redressed many adverse consequences to citizens who were disparately affected by marijuana offenses.  State v. Gomes, 253 N.J. 6, 11 (2023).  The Act, passed by the Legislature in February 2021, is codified, in relevant part, at N.J.S.A. 24:6I-31 to -56.  Pursuant to the Act, prosecutors are advised not to pursue certain enumerated marijuana offenses, N.J.S.A. 2C:35-23.1, and certain enumerated marijuana convictions are expunged by operation of law.  N.J.S.A. 2C:52-6.1.

N.J.S.A. 2C:52-6.1 directs the automatic expungement of any prior

conviction for the obtaining or possession of marijuana, certain other marijuana offenses, and "any disorderly persons offense or petty disorderly persons offense subject to conditional discharge pursuant to N.J.S.A. 2C:36A-1." N.J.S.A. 2C:52-6.1 applies to "any case that, prior to [the] effective date, includes a conviction or adjudication of delinquency solely for one or more crimes or offenses involving" one of the following four categories of offenses:

> [1] manufacturing, distributing, or dispensing, or possessing or having under control with intent to manufacture, distribute, or dispense, marijuana or hashish in violation of paragraph (12) of subsection b. of N.J.S.A. 2C:35-5, or [2] obtaining, possessing, using, being under the influence of, or failing to make lawful disposition of marijuana or hashish in violation of paragraph (3) or (4) of subsection a., or subsection b., or subsection c. of N.J.S.A. 2C:35-10, or [3] a violation involving marijuana or hashish as described herein and a violation of N.J.S.A. 2C:36-2 for using or possessing with intent to use drug paraphernalia with that marijuana or hashish, alone or in combination with each other, or [4] any disorderly persons offense or petty disorderly persons offense subject to conditional discharge pursuant to N.J.S.A. 2C:36A-1[.]

> [Ibid.]

At the time of his CDS offense, registrant was arrested and charged with possession of a CDS, marijuana, contrary to N.J.S.A. 2C:35-10(a)(4). The offense for which registrant was arrested is eligible for automatic expungement under the second category of expungable offenses. See N.J.S.A. 2C:52-6.1.

8

However, the lesser offense to which registrant pleaded guilty, "wandering, remaining in or prowling public places with purpose of obtaining or selling CDS," contrary to N.J.S.A. 2C:33-2.1(b), is not enumerated as being eligible for expungement in N.J.S.A. 2C:52-6.1. Although a disorderly-persons offense may be expungable pursuant to N.J.S.A. 2C:52-6.1's fourth category, W.G.'s wandering offense does not meet the condition that it be "subject to conditional discharge pursuant to N.J.S.A. 2C:36A-1." Offenses subject to conditional discharge pursuant to N.J.S.A 2C:36A-1 are "any disorderly persons offense or petty disorderly persons offense under chapter 35 or 36 of this title." It is an ineluctable fact that registrant's offense was neither a chapter 35 nor 36 offense subject to conditional discharge.

W.G. posits an absurd outcome would result from the CREAMM Act's permitted expungement of a possession of marijuana offense but disallowed expungement of a lesser-included offense. That argument is equally unavailing for two reasons. First, the Legislature purposefully did not include N.J.S.A. 2C:33-2.1(b) as part of the CREAMM Act. "The Legislature is presumed to know the law." Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of Borough of W. Wildwood v. Frederick, 435 N.J. Super. 552, 567 (App. Div. 2014) (quoting David v. Gov't Emps. Ins. Co, 360 N.J. Super. 127, 143 (App.

A-2462-23

Div. 2003)). The decision of the Legislature must be respected, as "a court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015) (citing DiProspero 183 N.J. at 492).

Second, even if registrant had been able to demonstrate expungement was available to him, it does not necessarily follow expungement pursuant to the CREEAM ACT would apply to the narrow exception to lifetime registration obligations offered to litigants pursuant to Megan's Law. As our Supreme Court recently observed when reviewing the effect expungement had upon a different statute, "[t]he relief afforded 'by . . . expungement . . . does not include the wholesale rewriting of history.'" N.J. Div. of Child Prot. & Permanency v. A.P., 258 N.J. 266, 278 (2024) (quoting G.D. v. Kenny, 205 N.J. 275, 294-95 (2011)). The Supreme Court found:

> In addition to N.J.S.A. 2C:52-19, the Legislature prescribed other exceptions to the expungement statute's restrictions on the use and disclosure of expunged records and information. See, e.g., N.J.S.A. 2C:52-18 (exception for certain uses of expunged records by the Violent Crimes Compensation Office); id. at -20 (exception for certain uses of expunged records in conjunction with supervisory treatment or diversion programs); id. at -21 (exception for certain uses of expunged records in conjunction with setting bail, authorizing pretrial release, preparing a presentence report, or sentencing); id. at -22 (exception for certain uses of expunged records by the Parole Board); id. at -23 (exception for certain uses of

expunged records by the Department of Corrections); id. at -23.1 (exception for certain uses of expunged or sealed records" to facilitate the State Treasurer's collection of any court-ordered financial assessments that remain due at the time of an expungement or sealing of records granted by a court"); id. at -27(a) (exception for disclosure of the "fact of an expungement, sealing, or similar relief" under N.J.S.A. 2C:52-8(b)); id. at -27(b) (exception for disclosure of the "fact of an expungement of prior charges" dismissed in certain settings involving supervisory treatment or other diversion programs); id. at -27(c) (exception for "information divulged on expunged records," which "shall be revealed by a petitioner seeking employment within the judicial branch or with a law enforcement or corrections agency," and which "shall continue to provide a disability as otherwise provided by law").

[A.P., 258 N.J. at 27 n.4.]

For example, in State v. G.L., 420 N.J. Super. 158 (App. Div. 2011), the defendant argued his multiple convictions for failure to re-register pursuant to Megan's Law should be vacated because the underlying conviction subjecting him to the Megan's Law's registration requirement was vacated and replaced with an offense where he was not subject to registration. Id. at 161. We found this argument futile, noting "[n]othing in the statute suggests that the requirements of registration should be retroactively annulled because a plea to a crime subject to Megan's [Law] is later withdrawn." Id. at 166. We further disagreed with the defendant's contention fundamental fairness required we

vacate his re-registration convictions, indicating at the time the defendant was convicted for failing to re-register, "[he] was made fully aware of his reporting obligations" and his violations were therefore "inarguably knowing." Id. at 167.

Although we need not reach that issue here because the CREEAM Act did not enumerate the offense to which defendant had pleaded guilty, we conclude no absurd result is created by this outcome.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2462-23