STATE of Wisconsin, Plaintiff-Respondent,

v.

Omer NINHAM, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1139. Submitted on briefs December 2, 2008.
–Decided March 3, 2009.*

2009 WI App 64

(Also reported in 767 N.W.2d 326.)

† Petition to review pending.

776

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Frank Tuerkheimer* of *Godfrey & Kahn, S.C.* of Madison, and *Bryan Stevenson* and *Rebecca Kiley* of *Equal Justice Initiative of Montgomery*, Alabama.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Omer Ninham appeals an order denying his postconviction motion seeking modification of his life sentence to allow for the possibility of parole.[1] He argues: (1) a sentence of life without the possibility of parole for a crime committed by a fourteen-year-old violates the Eighth Amendment prohibition against cruel and unusual punishment;[2] (2) regardless of the constitutionality of the sentence, it was unduly harsh and excessive; (3) new scientific evidence regarding adolescent brain development constitutes a new factor justifying a sentence reduction; and (4) he was sentenced based on consideration of an improper factor, specifically, the victim's family's belief system. We reject these arguments and affirm the order.

---

[1] The motion also requested a new trial, but Ninham does not pursue that avenue of relief on appeal.

[2] Ninham's statement of the issues also argues that the sentence violates article I § 6 of the Wisconsin Constitution, but he makes no specific separate argument on that issue.

## BACKGROUND

¶ 2. A jury convicted Ninham of first-degree intentional homicide in the death of thirteen-year-old Zong Vang. The evidence showed that Ninham and four accomplices knocked Vang off his bicycle without provocation, beat him, chased him to the fifth story of a parking ramp and threw him over the side to his death. The sentencing court also considered read-in offenses that Ninham threatened a judge and intimidated three witnesses after his arrest, including a threat to rape a woman and "make sure it's a slow death." Ninham also received conduct reports while awaiting trial, including reports for sharpening a weapon and attempting to escape. The court considered Ninham's age, his dysfunctional family, his extensive prior juvenile record, his problems with alcohol abuse and his recent interest in Native American spirituality, and concluded Ninham should not be allowed release on parole.

## DISCUSSION

### *Cruel and Unusual Punishment*

¶ 3. A sentence to life without the possibility of parole for a crime committed by a fourteen-year-old does not per se violate the constitutional prohibition against cruel and unusual punishment. In *Thompson v. Oklahoma*, 487 U.S. 815, 838 (1988), the Court struck down the death penalty for a crime committed by a fourteen-year-old. On remand, the sentence was reduced to life with the possibility of parole because the statute curtailing the governor's power to parole had not been in effect at the time Thompson committed his offense. *See Thompson v. State*, 762 P.2d 958 (Okla.

Crim. App. 1988). But for the effective date of the statutory change, Thompson could have been sentenced to life without parole. In *Roper v. Simmons*, 543 U.S. 551 (2005), the Court upheld the Missouri Supreme Court's conclusion that the Eighth Amendment prohibited execution of juveniles. Simmons' sentence was reduced to life without parole for a crime he committed as a seventeen-year-old. *Id.* at 560. Although these cases do not suggest that a sentence of life without parole violates the Eighth Amendment, Ninham argues that the differences between children and adults and between younger and older juveniles recognized in *Roper* compel the conclusion that life without parole constitutes cruel and unusual punishment. We disagree.

¶ 4. The Court's reasoning in *Roper* was based "in large measure on the 'special force' with which the Eighth Amendment applies when the state imposes the ultimate punishment of death." *United States v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006) (citing *Roper*, 543 U.S. at 568–69). The reasoning of *Roper* applies with only limited force outside the context of capital punishment. *See United States v. Feemster*, 483 F.3d 583, 588 (8th Cir. 2007). The *Roper* Court recognized that children have an underdeveloped sense of responsibility that often results in impetuous and ill-considered actions and decisions. *Roper*, 543 U.S. at 569. Therefore, children are not as morally reprehensible as adults for committing the same offenses. In addition, children are more vulnerable or susceptible to negative influences and peer pressure. *Id.* The Court also recognized that the character of a child is not as well formed as an adult and there is a greater possibility that a minor's character deficiencies will be reformed. *Id.* at 570. However, these

781

are factors the sentencing court should weigh when determining parole eligibility. *Roper* does not support the proposition that a sentence to life without parole for acts committed by a fourteen-year-old is always inappropriate regardless of the depravity of the crime, the juvenile's character and the need to protect the public.

¶ 5. Ninham contends the rarity of a life sentence without parole for a fourteen-year-old renders his punishment "unusual" under the Eighth Amendment. He provides statistics of children who were arrested[3] for murder or non-negligent manslaughter to establish that his sentence is unusual. Ninham's crime was unusual for its senseless and extreme brutality. When combined with his lack of remorse, his prior record and other crimes he committed while awaiting trial, his case is distinguished from other juveniles arrested for murder or manslaughter. Without a presentation of the circumstances of other juveniles' crimes, we cannot compare the sentences. The statistics Ninham provides do not establish that life without parole is a rare sentence for a juvenile whose crimes and character are comparable to his own.

■■

¶ 6. Ninham next argues that the unique circumstances of his case render his sentence unconstitutional. The presentence investigation report establishes that Ninham experienced chronic instability, violence and alcoholism in his home. Unfortunately, that is the history of many juvenile and adult killers. The trial court considered Ninham's home life along with the seriousness of the offense, Ninham's character and the need to protect the public. The weight to be accorded

---

[3] The charge for which they were arrested was not necessarily the charge they were sentenced on.

these factors is a matter for the trial court, and this court cannot substitute its own assessment of an appropriate penalty based on these factors. *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). The Eighth Amendment does not compel lenity based on a killer's chaotic childhood.

*Unduly Harsh and Excessive Sentence*

¶ 7. Ninham contends the sentence was unduly harsh and excessive regardless of whether it was unconstitutional. Whether a sentence is unduly harsh depends on whether it is so excessive and unusual and disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *Id.*

¶ 8. Citing cases from other jurisdictions, Ninham argues it is impossible to determine whether he will remain incorrigible for the rest of his life or to conclude he is forever irredeemable. *See Workman v. Commonwealth*, 429 S.W.2d 374, 378 (Ky. 1968); *Naovarath v. State*, 779 P.2d 944, 947 (Nev. 1989). It is not necessary to conclude that Ninham will remain incorrigible for the rest of his life or that he is forever irredeemable to support the sentence. The factors that go into a sentencing decision are not based solely on the defendant's characteristics. The court is not required to risk public safety based on the hope that years in prison will reform Ninham's character. In *Workman*, the juvenile was convicted of rape, not murder. In *Naovarath*, a thirteen-year-old was convicted of an unspecified degree of murder, and the court noted that he killed a man

783

who had been sexually molesting him. *Naovarath*, 779 P.2d at 945, 948. Neither of these crimes is comparable to Ninham's unprovoked murder of a thirteen-year-old. The brutality of Ninham's crime and the additional offenses he committed after his arrest defeat the argument that the sentence is disproportionate to the offense.

## *New Factor*

¶ 9. Ninham has not established a new factor that would support a sentence reduction. A new factor is a fact "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). It is a fact that frustrates the purpose of the original sentence. *State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989). Ninham contends recent research on adolescent brain development demonstrates biological reasons for adolescents' inability to control impulses, avoid risky behaviors, and make good decisions, rendering them less culpable than adults or older teenagers. Recent research also shows adolesents' amygdalas are more active than adults'. The amygdala is closely related to emotionally-laden responses. In addition, Ninham argues that mounting research suggests alcohol causes more damage to developing brains of teenagers than previously thought. The trial court correctly concluded the new research does not constitute a new factor. The court was aware of the differences between juveniles and adults. Continued medical and scientific research that provides a physiological explanation for the differences is not highly relevant to the sentence. The new information does not frustrate the purpose of the sentence.

¶ 10. Finally, Ninham contends his sentence was based on consideration of an improper factor, Vang's family's religious beliefs. The record does not support that contention. At the sentencing hearing Vang's brother stated that in his family's Hmong culture, the spirit of a murdered person could not be set free until the perpetrator was brought to justice. Later, when commenting on Ninham's claim to have developed an interest in Native American religion, the court commented:

> I find it incredibly interesting and somewhat significant that not only am I being asked to impose a sentence in this matter, which is my obligation and my responsibility, but I'm being asked to release a soul. I have to comment on that because that's an interesting clash of cultures, and it's what we're all about as a people. We have to deal with those cultures and those clashes as positively as we can.

> And everything I know about you, Omer, and everything I've gleaned about you from your—from the information that's been provided to me, you dealt with those things appositionally. You weren't willing to let those cultures and those different ideas intermingle. It had to be your way or no way at all. That's too bad. And it's that attitude that you're going to have to change. And I would hope—I can't do anything but give you the benefit of that.

> I would hope that [you] turn to spirituality. Native American spirituality gives you something to build on in that regard. It had better because I can tell you right now if your attitude and your ruthlessness and the perception that you have of your relationship to the community in which you are going to find yourself continues as it is, you're in for a real tough ride.

In context, the sentencing court's reference to the Vang family's religious beliefs did not constitute reliance on an improper factor. The court was commenting on Ninham's intolerance, as was demonstrated by testimony from Jeremy Whiting who was in the detention facility with Ninham before Ninham's trial. Whiting testified that a girl named Ger Quan Lee (phonetic) asked Ninham if he was the one who threw the little Asian boy off the parking ramp. Ninham responded "Yes, I threw that little bastard over the parking ramp. If you want to keep talking shit, I'll throw your little bitch ass over the parking ramp too." In this context, the record does not support Ninham's argument that the court gave improper consideration to the Vangs' or Ninham's religious beliefs.

*By the Court.*—Order affirmed.