IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33215-2-III |
| Appellant, | ) | |
| | ) | |
| V, | ) | |
| | ) | |
| ROBERT RUSSELL ELLISON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Robert Ellison pled guilty to sexual crimes committed at the earliest age of eleven. Neither a capacity hearing nor a finding of capacity to commit a crime preceded the conviction for the crimes. We address a question raised in other contexts but nonetheless a novel issue in our setting: whether Ellison's convictions can serve as predicate crimes for the crime of failure to register as a sex offender, despite the lack of a capacity hearing or finding? The trial court answered in the negative and dismissed the charge of failing to register. Because of the critical importance of conducting a capacity hearing before adjudging a child guilty of a crime and because of

due process concerns over convicting one incapable of committing a crime, we agree with the trial court. We affirm dismissal of the charge of felony failing to register. This affirmation does not relieve Ellison from the obligation to register.

## FACTS

Robert Ellison was born on July 1, 1982. Between July 1, 1993 and May 25, 1995, Ellison allegedly raped two boys each who were eight years old. Ellison denies uttering any threats or using force on the victims. Ellison and the two boys lived in the same foster home. We lack precise dates for the alleged rapes, but the sexual contact may have occurred on many occasions.

On June 22, 1995, the State of Washington charged Robert Ellison with two counts of rape of a child in the first degree with the crimes occurring between July 1, 1993 and May 25, 1995. Ellison was eleven years old at the beginning of the charging period. On August 3, 1995, Robert Ellison, at age thirteen, pled guilty to two counts of first degree child rape.

The record does not show that the juvenile court, during the 1995 prosecution, performed a capacity hearing or made a determination of Robert Ellison's understanding of the wrongfulness of the criminal acts. The juvenile court found Ellison guilty and sentenced him to forty-two to fifty-six weeks in confinement and to register as a sex offender. In the statement of juvenile on plea of guilty, Ellison wrote that the crimes occurred "on or about between [sic] July 1, 1993 and May 25, 1995." Clerk's Papers

2

(CP) at 28. The court entered no finding that Ellison engaged in a continuing course of criminal conduct.

On December 17, 1999, the State of Washington charged Robert Ellison with another crime, felony communication with a minor for immoral purposes on October 21, 1999. Ellison, at age seventeen, kissed an eleven-year-old girl and fondled her buttocks. The 1999 information alleged that Ellison had been previously convicted of felony rape of a child in the first degree. The previous felony rape convictions were critical to convicting Ellison of felony communication with a minor. Without a prior felony conviction, the State could convict Ellison only of gross misdemeanor communication with a minor. Ellison pled guilty to the felony charge of communication on December 23, 1999.

A state statute required that Robert Ellison register as a sex offender as a result of any of the three convictions. He thereafter repeatedly violated this requirement. The State of Washington serially convicted Robert Ellison for failure to register as a sex offender on November 6, 2001, May 22, 2002, July 11, 2003, February 18, 2005, October 2, 2007, January 20, 2009, and January 11, 2011. Also, on January 11, 2011, Ellison was convicted of escape from community custody. The latter convictions landed Ellison at the Airway Heights Corrections Center.

On September 29, 2013, the Airway Heights Corrections Center released Robert Ellison into community custody. Upon his release, Ellison listed his address as 327 1/2

3

W. Second Street, Spokane. The next day, Ellison visited his community custody supervisor, Ginger Burk. The Department of Corrections then placed a global positioning system (GPS) monitor on Ellison's person. Despite several attempts in the following week to contact Ellison at the Second Street address and other locations, Burk could not thereafter locate Ellison. The GPS signal failed. Ellison failed to register his new address with the county sheriff within the required three days of release from incarceration.

## PROCEDURE

The State of Washington charged Robert Ellison with felony failure to register as a sex offender in violation of RCW 9A.44.132 and escape from community custody in violation of RCW 72.09.310. Ellison pled guilty to the escape from community custody charge.

Failure to register can also constitute a gross misdemeanor, but the State has elected not to charge Ellison with a gross misdemeanor. This election bears importance to this appeal and complicates, if not confuses, our analysis. To sustain a prosecution for felony failure to register as a sex offender, the State must show a predicate felony led to the requirement of registration.

Robert Ellison moved to dismiss the felony failure to register as a sex offender charge. He argued that he had no duty to register as a sex offender because his 1995 convictions were void predicate sex offenses since a finding of his capacity to commit the

4

crimes did not precede the convictions. He further argued that his 1999 conviction could not serve as the predicate crime for felony failure to register because the State relied on his 1995 felony convictions to convict him in 1999 for felony communication with a minor. The trial court agreed and dismissed the charge. The State appeals.

## LAW AND ANALYSIS

The State of Washington assigns error to the trial court's dismissal of the felony failure to register as a sex offender charge. A trial court may grant pretrial dismissal of a criminal charge under CrR 8.3(c) for insufficient evidence when no reasonable trier of fact could find beyond a reasonable doubt the essential elements of the crime. *State v. Knapstad*, 107 Wn.2d 346, 349, 729 P.2d 48 (1986). The trial court must decide, viewing facts in the light most favorable to the State, whether the facts establish a prima facie case of guilt. *Knapstad*, 107 Wn.2d at 357; *State v. Groom*, 133 Wn.2d 679, 684, 947 P.2d 240 (1997). We conduct a de novo review of a trial court's decision to dismiss and again view the facts and inferences in the light most favorable to the State. *State v. Newcomb*, 160 Wn. App. 184, 188-89, 246 P.3d 1286 (2011).

The parties on appeal do not dispute the important facts. The appeal poses only questions of law.

### Child Capacity Hearing

The trial court's dismissal of the charge of felony failure to register as a sex offender must be reversed if either the 1995 convictions for felony first degree child rape

5

or the 1999 felony conviction for communication with a minor for immoral purposes suffice as predicate crimes for failure to register. We first address the validity of the 1995 convictions. Their legitimacy requires a discussion of a child's capacity to commit a crime and the repercussions of a court's failure to determine a young child's capacity to commit a crime before a conviction. Assuming we conclude the 1995 convictions to be erroneous, we later decide the ramifications of the defects in those convictions for purposes of the current charge of failure to register as a sex offender.

The State balks to the use of the term "invalidate" in the context of the propriety of the 1995 and 1999 convictions. The State notes that Robert Ellison does not attack any of the three convictions by direct appeal or by a personal restraint petition. Ellison instead limits his attack on the convictions to exploitation of the convictions as predicate crimes for purpose of the felony charge of failure to register as a sex offender. Regardless of the outcome of this appeal, the three convictions remain effective unless or until Ellison later seeks to vacate the judgments of conviction. While we recognize the State's concern with loose use of the word "invalidate," we will often use such word or related terms, but only in connection with determining whether the convictions are valid as predicate crimes for felony failure to register as a sex offender. Case law also employs such terminology.

Robert Ellison was age eleven and twelve during the charging period for rape of a minor. The State believes that Ellison engaged in more than two acts of rape, but the

6

State only alleged two acts, and the court convicted Ellison of only two acts. We do not know the dates of the two rapes, for which the court convicted Ellison. To give Robert Ellison the benefit of the doubt, we assume that all acts occurred when Ellison was age eleven. Thus, we assume that the trial court should have conducted, but failed to conduct, an infant capacity hearing before any of the two convictions. When nothing in the trial court record suggests a capacity hearing, we may presume the proceeding did not take place. *State v. Golden*, 112 Wn. App. 68, 80, 47 P.3d 587 (2002).

RCW 9A.04.050 declares in part:

> Children under the age of eight years are incapable of committing crime. Children of eight and under twelve years of age are presumed to be incapable of committing crime, but this presumption may be removed by proof that they have sufficient capacity to understand the act or neglect, and to know that it was wrong.

The statute codifies "the infancy defense." *State v. Ramer*, 151 Wn.2d 106, 114, 86 P.3d 132 (2004). The infancy defense shields from the criminal justice system those individuals of tender years who are less capable than adults of appreciating the wrongfulness of their behavior. *State v. Ramer*, 151 Wn.2d at 114; *State v. Q.D.*, 102 Wn.2d 19, 23, 685 P.2d 557 (1984).

Sound reason lies behind excusing children from criminal culpability. The United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) addressed the issue of capital punishment for one under the age of eighteen, but the Court's comments apply to prosecuting and punishing any minor. The *Roper* Court

recognized that scientific and sociological studies confirm that children have an underdeveloped sense of responsibility that often results in impetuous and ill-considered actions and decisions. *Roper*, 543 U.S. at 569. Therefore, behavior of children is not as morally reprehensible as criminal behavior of adults. *State v. Ninham*, 2009 WI App 64, 316 Wis. 2d 776, 781, 767 N.W.2d 326, *aff'd*, 2011 WI 33, 333 Wis. 2d 335, 797 N.W.2d 451. In addition, according to *Roper*, children are more vulnerable or susceptible to negative influences and peer pressure. *Roper*, 543 U.S. at 569. The Court also recognized that the character of a child is not as well formed as an adult and there is a greater possibility that a minor's character deficiencies will be reformed. *Roper*, 543 U.S. at 570. We add that no state would allow an eleven-year-old to contract, work for hire, drive a car, vote, drink alcohol, serve on a jury, marry, or join the military.

Under Washington law, in order to overcome the presumption of incapacity of one under the age of twelve, the State must provide clear and convincing evidence that the child had sufficient capacity to understand the act and to know that it was wrong. *State v. J.P.S.*, 135 Wn.2d 34, 38, 954 P.2d 894 (1998); *State v. Q.D.*, 102 Wn.2d at 26. A capacity determination is fact-specific and must be in reference to the specific act charged. *State v. J.P.S.*, 135 Wn.2d at 37. The focus is on whether the child appreciated the quality of his or her acts at the time the act was committed, rather than whether the child understood the legal consequences of the act. *State v. T.E.H.*, 91 Wn. App. 908, 913, 960 P.2d 441 (1998).

Washington courts consider seven factors when determining capacity: (1) the nature of the crime, (2) the child's age and maturity, (3) whether the child evidenced a desire for secrecy, (4) whether the child told the victim, if any, not to tell, (5) prior conduct similar to that charged, (6) any consequences that attached to that prior conduct, and (7) whether the child had made an acknowledgment that the behavior is wrong and could lead to detention. *State v. Ramer*, 151 Wn.2d at 114-15; *State v. J.P.S.*, 135 Wn.2d at 38-39. When the State charges a juvenile with a sex crime, the State carries a greater burden of proving capacity and must present a higher degree of proof that the child understood the illegality of the act. *State v. J.P.S.*, 135 Wn.2d at 38. The court determines capacity as of the date of the crime, not the date of the capacity hearing. *State v. J.P.S.*, 135 Wn.2d at 37-38; *State v. K.R.L.*, 67 Wn. App. 721, 725, 840 P.2d 210 (1992).

In Washington, a determination of capacity is required to confer general jurisdiction to punish any child eight to eleven years of age for a crime. *State v. Golden*, 112 Wn. App. at 77 (2002). When a capacity or competency determination is required by the statute creating jurisdiction, the failure to comply does not deprive the court of jurisdiction over the subject matter or the person. *State v. Gilman*, 105 Wn. App. 366, 369, 19 P.3d 1116 (2001). Failure to conduct a hearing, however, deprives the court of the authority to act. *State v. Golden*, 112 Wn. App. at 77 (2002). Until the juvenile conducts a capacity hearing, the court lacks authority to do anything but dismiss the

9

charge. *State v. Golden*, 112 Wn. App. at 77. In *State v. Golden*, this court affirmed the juvenile court's grant of the defendant's motion to withdraw a guilty plea because of the absence of a record of a capacity hearing preceding the plea.

Although the statute creating a presumption of incapacity became effective in 1975, an amendment to JuCr 7.6, adopted in 1997, first expressly required a juvenile court to conduct a capacity hearing. *Compare* JuCr 7.6 (1997) *with* JuCr 7.6 (1998). Thus, the 1995 juvenile court was not required by court rule to hold a separate capacity hearing. We still hold the 1995 conviction invalid. RCW 9A.04.050 was in effect in 1995, and the 1995 court entered no finding of capacity to rebut the presumption of incapacity. Courts conducted some form of hearing to determine juvenile capacity even before the 1997 rule amendment. *State v. Q.D.*, 102 Wn.2d 19 (1984), *State v. Golden*, 112 Wn. App. 68 (2002), and *State v. K.R.L.*, 67 Wn. App. 721 (1992), all involve juvenile convictions before the amendment to JuCr 7.6.

The State emphasizes that it charged Robert Ellison with crimes occurring between July 1, 1993 and May 25, 1995. Robert Ellison reached the age of twelve by the end of the charging period. The State, therefore, argues that we should consider Ellison to be age twelve for purposes of the charges of rape of a child. We reject this argument because the State provided no proof, either during the 1995 prosecution or in this later prosecution, of any misconduct after the age of eleven. The State forwards no decision directly on point supporting the argument.

10

In support of its argument, the State cites *In re Personal Restraint of Crabtree*, 141 Wn.2d 577, 585, 9 P.3d 814 (2000), wherein the court allowed application of a new statute to acts performed both before and after the effectiveness of the new statute. The defendant conceded that some of his misconduct occurred after the effectiveness of the statute. We do not consider *Crabtree* relevant, since our appeal does not concern the application of a new statute. In the plea statement, Robert Ellison wrote that the crimes occurred "on or about between [sic]" July 1, 1993 and May 25, 1995. CP at 28. The awkward language written by Ellison presages a lack of understanding. Ellison did not expressly state that a crime occurred after he turned twelve on July 1, 1994. The trial court made no finding of the dates of the crimes. The trial court did not rule that Ellison engaged in a continuous course of conduct. Since all of the misconduct could have occurred at age eleven, the State should have conducted a capacity hearing, shown some of the conduct occurred at age twelve, or amended the information to contain a charging period only after Ellison reached age twelve.

Failure to Register as a Sex Offender

We move to the question of what effect the lack of a capacity hearing, during the 1995 prosecution, poses to the recent felony charge for failing to register as a sex offender. We first outline the law of registration.

Under RCW 9A.44.132:

A person commits the crime of failure to register as a sex offender if

11

the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130.

Under RCW 9A.44.130(1)(a), any person residing in this state

who has been *found to have committed or has been convicted* of any sex offense . . . shall register with the county sheriff for the county of the person's residence.

(Emphasis added.) Conviction for a sex offense in Washington is an essential element of the crime of failure to register as a sex offender. *See State v. Werneth*, 147 Wn. App. 549, 555, 197 P.3d 1195 (2008); *State v. Taylor*, 162 Wn. App. 791, 796, 259 P.3d 289 (2011).

Robert Ellison's 1995 rape of a child meets the sex offense element of the failure to register as a sex offender charge. Rape of child in the first degree is a class A felony in violation of RCW 9A.44.073. As a felony in violation of chapter 9A.44 RCW, a rape of a child conviction is a "sex offense" mandating an offender's registration under RCW 9A.44.130. RCW 9.94A.030(46)(a)(i); RCW 9A.44.128(10)(a); RCW 9A.44.132.

Use of 1995 Convictions as Predicate Crimes for Failure to Register

We previously concluded that the 1995 trial court erroneously convicted Robert Ellison because of the lack of a child capacity hearing. Still we recognize the convictions have never been vacated. On record, Robert Ellison still stands "convicted" of sex crimes. RCW 9A.44.130(1)(a) demands registration of anyone "found to have committed or has been convicted of any sex offense." Robert Ellison does not directly or collaterally

12

attack the convictions in this proceeding. The State contends that Ellison must first vacate the convictions before avoiding the obligation to register as a sex offender.

The State of Washington also contends that it need only show facial validity of the 1995 convictions, and it fulfills this showing. Under the State's argument, any failure to conduct a capacity hearing is unimportant. The State also contends that, to attack the validity of the underlying sexual offense, the accused must show constitutional invalidity and Ellison does not challenge his 1995 conviction on constitutional grounds. Robert Ellison maintains that the trial court correctly dismissed the charge because the State could not prove beyond a reasonable doubt that his prior sex offense convictions were valid.

Conviction of an earlier crime is sometimes an element of a later or second crime. Some examples include the former habitual criminal offense, RCW 9.92.090, possession of a firearm by one convicted of a serious crime, RCW 9.41.040, escape, RCW 9A.76.110, felony violation of a no-contact order, RCW 26.50.110(5), and Robert Ellison's charge of failure to register as a sex offender, RCW 9A.44.132. The length of a sentence or degree of punishment may also depend on one or more convictions of earlier crimes. Finally, a previous conviction of a crime may be used to impeach an accused testifying on his own behalf. In all these instances, the court must determine under what, if any, circumstances the accused may attack the validity of the earlier conviction in order to preclude its use in the current prosecution. The success of the attack can depend on the

13

nature of the pending or second charges and the nature of the alleged invalidity of the first conviction.

No Washington case addresses the narrow issue of whether one charged with failure to register as a sex offender may successfully attack the validity of the underlying sex offense. Therefore, we review analogous Washington cases in chronological order in order to divine principles and rationales to apply in our unique setting. We intersperse United States Supreme Court decisions that also discuss the State's use of prior convictions in a second criminal prosecution.

In *Burgett v. Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967), the Supreme Court held that the State of Texas could not use four prior convictions to prosecute a defendant under the Texas recidivism statute. The records of the earlier convictions established that James Burgett lacked assistance of counsel contrary to the Supreme Court's recent decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Despite Burgett failing to directly or collaterally attack the earlier convictions, the Supreme Court characterized the convictions as "constitutionality infirm" and "void." 389 U.S. at 114-15. The Court reasoned:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* [372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)] to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

14

*Burgett*, 389 U.S. at 115 (internal citations omitted).

In *Loper v. Beto*, 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972), the nation's high Court held that use for impeachment purposes of prior convictions, which are void for failure to afford defendant his right to counsel, deprives a criminal defendant of due process of law when the use of such prior convictions might influence the outcome of the case. The earlier conviction was not an element of the crime charged, nor did the government use the earlier conviction to increase punishment. The government sought use of the conviction to support guilt. The high Court ruled that the rationale behind *Burgett v. Texas* inevitably led to a prohibition of use of the earlier conviction for impeachment. The absence of counsel impaired the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt. The State's use of the prior conviction caused Otis Loper to suffer anew from his unconstitutional deprivation.

In *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972), the Supreme Court remanded the case for resentencing. The trial judge, when imposing a sentence for bank robbery, explicitly considered three previous felony convictions. Two of the convictions were constitutionally invalid, having been obtained in violation of the right to counsel. The Supreme Court suspected that the bank robbery sentence might have been different if the sentencing judge had known that at least two of the previous convictions had been unconstitutionally obtained. The Court reasoned that to allow use of a constitutionally invalid conviction in sentencing would erode the teachings of

15

*Gideon* and *Burgett*.

In *State v. Paul*, 8 Wn. App. 666, 508 P.2d 1033 (1973), this court recognized the rule that the use of prior convictions for the purpose of impeachment or enhancement of punishment shall not be allowed unless it appears on the record that the defendant was afforded counsel at the prior hearing or made a valid waiver of counsel. We refused to apply the rule, however, because the defendant, during his direct examination, testified to the earlier convictions.

In *State v. Murray*, 86 Wn.2d 165, 543 P.2d 332 (1975), the prosecution used John Murray's prior conviction for grand larceny for the purpose of impeaching him when he testified on his own behalf in the trial on charges of second degree assault. After the conviction for second degree assault, the conviction for larceny was overturned on Fourth Amendment grounds. On appeal of the assault charges, Murray argued that use of a conviction later overturned was error. The State Supreme Court noted that *Loper v. Beto* precluded use of a prior conviction, obtained in violation of the Sixth Amendment's right to counsel, for impeachment purposes. The court refused to apply the holding of *Loper* to proscribe the use of a prior conviction for impeachment purposes when the constitutional invalidity was under the Fourth Amendment. The court reasoned that, on the one hand, the right to counsel goes to the integrity of the fact-finding process. A conviction in violation of the Sixth Amendment right renders the conviction inherently unreliable. On the other hand, the Fourth Amendment seeks deterrence of illegal and

16

improper police conduct and not the preservation of reliability in the fact-finding process. Evidence seized in violation of the proscription against unreasonable searches and seizures loses no probative value. The suppressed evidence would enhance the reliability of any verdict.

In *State v. Holsworth*, 93 Wn.2d 148, 159, 607 P.2d 845 (1980), our State Supreme Court addressed the circumstances under which an accused may challenge the validity of an earlier conviction, and, on a challenge, which party holds the burden of proving the validity or invalidity of the earlier conviction. *Holsworth* was an appeal of seven trial court decisions involving whether the accused was a habitual offender. Each accused claimed the State could not rely on convictions of prior offenses on the ground that the prior court never advised him of the nature of the offense or the nature and consequences of pleading guilty before he pled guilty. After the respective guilty pleas, the United States Supreme Court decided *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), in which the Court held that the pleading defendant must be apprised of the nature of the offense and the consequences of pleading guilty, in order for the plea to be accepted as knowing, intelligent, and voluntary.

In *State v. Holsworth*, the accused were not challenging the pre-*Boykin* conviction itself, so as to set aside the conviction, but only its use in the habitual criminal proceeding. The State underscored that the Washington high court refused to apply *Boykin* retroactively and thus the court should not allow the defendant to challenge the

guilty plea retroactively in a later prosecution. The state high court asked: (1) whether

the defendant may attack the use of the earlier convictions, and (2), if so, who carries the

burden of proving the validity or invalidity of the guilty plea and prior conviction based

on the plea. The court held that the defendant in a habitual criminal proceeding can

attack the use of convictions based on pre-*Boykin* guilty pleas and the State has the

burden of proving that the prior conviction was based on a useable guilty plea. The court

reasoned that the attack in the habitual criminal proceeding was neither collateral nor

retroactive. The defendant instead challenged the present use of an infirm plea in a

present criminal proceeding. The prior convictions were elements of the habitual

criminal statute that the State must prove beyond a reasonable doubt.

In *State v. Holsworth*, the State sought to distinguish the United States Supreme

Court's *Gideon/Burgett* analysis. The State claimed the defendant's right to an intelligent

plea of guilty under *Boykin* paled compared to the right to counsel under *Gideon*. The

State highlighted that the right to counsel is expressly enumerated in the United States

Constitution. Our State Supreme Court rejected this distinction and considered the

*Boykin* right to be constitutionally based in the due process clause. The court repeated

the *Burgett* rationale that use of an earlier infirm conviction renewed the deprivation of

the defendant's constitutional rights.

In *Lewis v. United States*, 445 U.S. 55, 100 S. Ct. 915, 63 L. Ed. 2d 198 (1980),

the United States Supreme Court refused to follow *Burgett v. Texas* and held that, under

18

the federal firearms statute, the predicate felony conviction need not be constitutionally valid. The federal statute prohibited a "convicted" person from possessing a gun. 18 U.S.C. app. § 1202(a)(1) (repealed 1986). The earlier conviction of George Lewis was also flawed because of the lack of counsel. The court concluded that Congress' failure to modify the word "convicted" meant that one could not possess a firearm regardless of the invalidity of the conviction. The Supreme Court failed to observe, nonetheless, that nearly, if not all, statutes creating a crime based on a predicate crime do not qualify the term "convicted." A cynical reviewer might conclude that the refusal to follow *Burgett* was the result of a change in the composition of the Court, not a reasoned distinction.

Three months after the State Supreme Court's decision in *State v. Holsworth*, the same court decided *State v. Swindell*, 93 Wn.2d 192, 197, 607 P.2d 852 (1980). The State charged Jimmie Swindell with the crime of possession of a pistol by one previously convicted of a crime of violence. Swindell objected to use of the prior conviction because the prosecutor, outside the presence of Swindell's counsel's, threatened to increase charges if Swindell did not plead to the present charge. In the prosecution for possession of a pistol, the State did not dispute Swindell's allegation of prosecutorial misconduct, but argued Swindell could not challenge the validity of the earlier conviction of a violent crime.

In *State v. Swindell*, the Supreme Court again noted that the defendant did not attempt to annul the previous judgment of guilt, but sought to foreclose the prior

conviction's present exploitation to establish an essential element of the crime. The court

followed *Holsworth* and held that Jimmie Swindell could challenge the use of a

constitutionality invalid guilty plea. In turn, the State needed to prove beyond a

reasonable doubt the constitutional validity of the earlier conviction.

In *State v. Thompson*, 95 Wn.2d 888, 632 P.2d 50 (1981), *overruled on other*

*grounds by State v. Calegar*, 133 Wn.2d 718, 947 P.2d 235 (1997), the state high court

ruled that the State of Washington need not prove the validity of an earlier manslaughter

conviction before impeaching the defendant with the crime. Mack Thompson argued the

trial court committed error when allowing the impeachment since he pled guilty to the

earlier crime without a full understanding of the charges against him and the consequence

of his guilty plea. He relied on *Boykin v. Alabama*. The Supreme Court noted that

Thompson was represented by counsel during the plea.

The Washington Supreme Court, in *State v. Thompson*, observed that no court had

adopted the rule that convictions resulting from pleas in violation of *Boykin* could not be

employed by the prosecution for impeachment purposes. Courts had only ruled that

convictions without the benefit of counsel could not be used for impeachment. The State

Supreme Court agreed that, in *State v. Holsworth*, it recognized that, for purposes of

introducing evidence of a prior conviction in a habitual criminal proceeding, there was no

cognizable difference between excluding evidence of a prior conviction based on an

invalid plea and excluding evidence of a prior conviction obtained without benefit of

20

counsel. The court nonetheless distinguished *Holsworth*, because *Holsworth* concerned the use of an invalid plea in a present criminal sentencing procedure to prove an element of the crime and therefore needed proof by the State beyond a reasonable doubt. *Thompson* instead involved the force of the earlier guilty plea on a collateral matter, the credibility of the witness. Thus, the use of a conviction based on an allegedly invalid guilty plea did not impinge any constitutional right.

The *Thompson* court reasoned that the United States Supreme Court decision in *Loper v. Beto* did not compel a different result, since *Loper* was an extreme case wherein the State asked in damaging detail about four previous felony convictions occurring as far back as sixteen years prior to the trial. The *Thompson* court misread *Loper*, however, since *Loper* did not limit its holding to extreme cases. The court limited its holding to cases where use of the prior conviction for impeachment may have influenced the prosecution's outcome.

In *State v. Gore*, 101 Wn.2d 481, 681 P.2d 227 (1984), the Evergreen State Supreme Court returned to requiring the State to show proof of a legitimate underlying conviction. The court ruled that the statute prohibiting possession of firearms by one convicted of a crime of violence requires a constitutionally usable predicate conviction. Since Johnie Lee Gore's underlying burglary conviction was later reversed on appeal for insufficient evidence, his conviction for a firearms violation was reversed.

In *State v. Gore*, the Court of Appeals had affirmed the conviction of Johnie Lee

21

Gore, while relying on the United States Supreme Court decision in *United States v. Lewis*. Remember that *Lewis* held that, under the federal firearm possession statute, the government need not show a constitutionally valid underlying conviction. The State Supreme Court found the United States Supreme Court's reasoning in *Lewis* unpersuasive and affirmed its decision in *State v. Swindell*. RCW 9.41.040 prohibited persons "convicted" of a crime of violence from possessing a firearm. The court observed that the language of the statute could prohibit possession of a firearm by anyone "convicted" of a crime, regardless of the validity of the crime. In the alternative, the statute could demand that any conviction be constitutionally valid. Because of two possible constructions of the statute, the rule of lenity demanded the court to construe the statute against the State and in favor of Johnie Lee Gore. The court determined that use of a constitutionally invalid conviction in a subsequent prosecution to be a denial of due process. Later in the opinion, the court did not qualify the invalid conviction with the modifier "constitutionally." Instead the court concluded:

> We therefore agree with petitioner that his conviction for violating RCW 9.41.040, being predicated on an *invalid conviction*, must be reversed.

*State v. Gore*, 101 Wn.2d at 488 (emphasis added).

In *State v. Gonzales*, 103 Wn.2d 564, 693 P.2d 119 (1985), the state high court held that, in a prosecution for escape, the State is not required to prove the defendant had been detained pursuant to a constitutionally valid conviction. The court distinguished

22

*Swindell* and *Gore* on the ground that Jimmie Swindell's and Johnie Lee Gore's prior convictions were used to prove guilt in a "status-type crime." *State v. Gonzales*, 103 Wn.2d at 567. The court also noted that the statute involved in *Gore* and *Swindell* forbade exercise of a constitutionally protected right to bear arms. The escape statute did not impinge on a constitutionally protected right. The court observed that the vast majority of jurisdictions refused defendants, charged with escape, to challenge the legality of their confinement at the time of escape. The court failed to note that freedom from incarceration, except on constitutionally valid convictions, is also a constitutional right.

In *State v. Ammons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986), defendants challenged the Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA) on various constitutional grounds. They argued that, under the due process clause, the SRA should require the State to prove a prior conviction is constitutionally valid beyond a reasonable doubt before including the conviction in the offender score. In its review of the due process contention, the court noted:

> In only two situations has this court held that the State, before using a prior conviction, had to affirmatively show its constitutional validity: (1) a proceeding to establish a status of habitual criminal or habitual traffic offender, and (2) a proceeding to establish the crime of felon in possession of a firearm.

23

*Ammons*, 105 Wn.2d at 187 (internal citations omitted). The court also noted that it refused to apply such a requirement in other situations, including use of a prior conviction for impeachment and use of a prior conviction to establish a minimum term.

In *State v. Summers*, 120 Wn.2d 801, 846 P.2d 490 (1993), the State charged the defendant with unlawful possession of a firearm because he had a previous felony conviction for second degree manslaughter. During the manslaughter trial, the trial court improperly refused to offer Arthur Summers' proposed self-defense instruction. Summers challenged his possession of a firearm charge by calling into question the validity of his manslaughter conviction, but the trial court rejected his argument and convicted him. On review, the Supreme Court found *Swindell* and *Gore* factually distinguishable. Despite the differences, the court sided with Summers. The court held that the State failed to prove beyond a reasonable doubt, as an element of the unlawful possession of a firearm charge, that there existed a constitutionally valid conviction for a crime of violence.

Two foreign decisions support the State's argument. Our sister state, California, held that the registration requirement of the California Sex Offender Registration Act applies based on the fact of conviction, even if the conviction is later determined to have been invalid. *In re Watford*, 186 Cal. App. 4th 684, 112 Cal. Rptr. 3d 522 (2010). The California court chose to follow the United States Supreme Court's analysis in *Lewis v. United States*, 445 U.S. 55 (1980). According to the *Watford* court, since the relevant

24

statute did not expressly exclude invalid convictions, one must register regardless of the validity of the underlying conviction. Of course, the Washington Supreme Court rejected this reasoning in *State v. Gore*, 101 Wn.2d 481 (1984).

The New Jersey appellate court, in *State v. G.L.*, 420 N.J. Super. 158, 19 A.3d 1017 (App. Div. 2011), followed the reasoning in *In re Watford* and held that the defendant was not entitled to vacate convictions for failing to register as a sex offender, even though the underlying juvenile delinquency adjudication for sexual assault had been vacated. The New Jersey court emphasized that sex offenders pose a continuing threat to society. The New Jersey court also relied on the United States Supreme Court's decision in *Lewis v. United States*.

Having reviewed relevant reported cases, we must now determine what decisions and rationales to follow. In the end, we find reasons favoring Robert Ellison more persuasive.

In all decisions, in which the court held the State must prove the validity of the predicate conviction beyond a reasonable doubt and in which the court dismissed the second prosecution, the accused presented some evidence of constitutional baselessness of the first conviction. Robert Ellison does not challenge the constitutional infirmness of his 1995 convictions for child rape. He challenges the convictions on statutory grounds. The 1995 juvenile court failed to find him capable of committing a crime and thereby disobeyed RCW 9A.04.050.

Robert Ellison's omission of a constitutional challenge to the predicate crimes, based on decisional law, strongly favors the State's request for reversal of the trial court's dismissal of the charge of failure to register as a sex offender. Nevertheless, we note that no decision expressly rules that the accused may challenge the predicate crime solely on constitutional grounds. We question the importance of the difference between a constitutionally infirm predicate conviction and an illegitimate conviction of an eleven year old, who was not found capable of committing a crime and was presumably incapable.

Although we find no decision that holds a child has a constitutional right not to be found guilty of a crime unless shown to be capable of guilt, we likewise find no decision that holds to the contrary. In a related context, the United States Supreme Court has repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process. *Ryan v. Gonzales*, ___ U.S. ___, 133 S. Ct. 696, 703, 184 L. Ed. 2d 528 (2013); *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996); *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). More on point, an individual who lacks the required intent cannot, under due process principles, be convicted of a criminal offense. *Finger v. State*, 117 Nev. 548, 567, 27 P.3d 66 (2001). In *State v. Strasburg*, 60 Wash. 106, 110 P. 1020 (1910), the Washington Supreme Court declared unconstitutional a Washington statute that provided that insanity was not a defense to a crime and specifically prohibited the introduction of

26

any evidence on the issue of legal insanity. An insane person cannot form the intent to commit a crime. The reason for a capacity hearing is to determine if the child can form the requisite intent to commit a crime.

In *State v. Gonzales*, the Washington Supreme Court refused to allow a challenge to the prior offense establishing first degree escape. The court distinguished *State v. Swindell* and *State v. Gore* on the ground that possession of a gun after a serious crime constituted a "status-type" crime. *Gonzales*, 103 Wn.2d at 567. The possession of a firearm is unlawful because of the status of the accused being a felon. Failure to register as a sex offender is a quintessential status crime. The accused must register solely because of his status as a convicted sex offender. This factor weighs heavily in favor of Robert Ellison.

The requirement that the State must prove beyond a reasonable doubt the predicate conviction in a prosecution for possessing a firearm is purportedly based, in part, on the constitutional right to bear arms. At the same time, one deserves a constitutional right, absent a compelling reason, not to register with the government and have one's address published to the public. Each individual is guaranteed a significant measure of privacy free from governmental invasion, or intrusion by others, and an equally significant right of liberty. *Coe v. Sex Offender Registry Bd.*, 442 Mass. 250, 812 N.E.2d 913, 921 (2004) (addressing Massachusetts due process clause). Sex offender registration requirements implicate constitutionally protected liberty and privacy interests. *John Doe v. Sex*

27

*Offender Registry Bd.*, 470 Mass. 102, 18 N.E.3d 1081, 1085 (2014). An individual's expectation of privacy as to his residential information is subject to strict scrutiny analysis, which means the government must show that the law is narrowly tailored to serve a compelling interest. *State v. Brooks*, 2012 MT 263, 367 Mont. 59, 289 P.3d 105, 108. Compulsory registration statutes implicate the constitutional right to privacy. *People v. Hove*, 7 Cal. App. 4th 1003, 1006, 9 Cal. Rptr. 2d 295 (1992) (applying the California Constitution). For this reason, one should possess the capacity to commit a sex crime, before the government demands he register. We do not equate registration of sex offender statutes to the Nazi Germany Jewish registration laws or apartheid South Africa's pass laws, but absent a compelling reason, a registration law echoes these former wrongs.

Our Supreme Court, in *State v. Murray*, 86 Wn.2d 165 (1975), distinguished between an illegitimate conviction on Fourth Amendment grounds from an invalid conviction on Sixth Amendment grounds. The right to counsel impacted the integrity of the fact-finding process. In other words, the constitutional violation inhered in the finding of guilt. The failure to determine if a child possesses the capacity to commit a crime likewise effects the finding of guilt. The capacity of the child goes to the essence of guilt. A prior conviction should not be used unless we know the child could be guilty.

In *State v. Gore*, the Supreme Court addressed a statute that prohibited persons "convicted" of a crime of violence from possessing a firearm. The court observed that

28

the language of the statute could prohibit possession of a firearm by anyone "convicted" of a crime, regardless of the validity of the crime. In the alternative, the statute could demand that any conviction be constitutionally valid. Because of two possible constructions, the rule of lenity demanded the court to construe the statute against the State and in favor of Johnie Lee Gore.

The same rule of lenity should favor Robert Ellison. Under RCW 9A.44.132 and RCW 9A.44.130(1)(a), only one "found to have committed" or "convicted of any sex offense" is guilty of failure to register as a sex offender. Lenity requires construing the statute to demand a legitimate finding of guilt or an unimpeachable conviction.

We reject our sister states' rulings in *In re Watford*, 186 Cal. App. 4th 684 (2010) and *State v. G.L.*, 420 N.J. Super. 158 (App. Div. 2011). The California court and New Jersey courts principally based their decisions on the United States Supreme Court's analysis in *Lewis v. United States*, 445 U.S. 55 (1980). Our high court has rejected this analysis.

Use of 1999 Conviction as Predicate Crime for Felony Failure to Register

We agree with Robert Ellison that, on discrediting the 1995 felony convictions for child rape, we must also disregard, for purposes of this prosecution, the 1999 conviction for felony communication with a minor. No law directly addresses this unique and abstruse question. Nevertheless, by crediting the 1995 convictions to support the 1999 charge, we would compound the 1995 error when the trial court failed to find Robert

29

Ellison competent to commit a crime. *Burgett v. Texas*, 389 U.S. 109 (1967), *Loper v. Beto*, 405 U.S. 473 (1972), *United States v. Tucker*, 404 U.S. 443 (1972), *State v. Holsworth*, 93 Wn.2d 148 (1980), *State v. Swindell*, 93 Wn.2d 192 (1980), *State v. Gore*, 101 Wn.2d 481 (1984), and *State v. Summers*, 120 Wn.2d 801 (1993) teach us not to multiply the effects of an infirm judgment.

To repeat from our opening pages, the State charged Robert Ellison only with felony failure to register as a sex offender. Even with our invalidation of the 1995 childhood rape convictions, the State may charge Robert Ellison with gross misdemeanor failure to register. The refutation of the 1995 convictions does not necessarily annul the 1999 conviction for communication with a minor. The discrediting of the 1995 convictions may instead reduce the 1999 conviction from felony communication with a minor for an immoral purpose to a gross misdemeanor communication with a minor. RCW 9.68A.090. In turn, Robert Ellison might be found guilty of gross misdemeanor failure to register as a sex offender. RCW 9A.44.132(2). The State holds a charging prerogative and so we limit the appeal to the question of whether the State can sustain a charge of felony failure to register as a sex offender against Robert Ellison.

## CONCLUSION

We hold the 1995 felony convictions and the 1999 felony conviction of Robert Ellison cannot be used as predicate crimes to support the charge of felony failure to register as a sex offender because of the 1995 juvenile court's failure to find Ellison

30

No. 33215-2-III
*State v. Ellison*

competent to commit a crime. We affirm the trial court's dismissal of the charge against

Ellison.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, C.J.

WE CONCUR:

Siddoway, J.

Lawrence-Berrey, J.

31